**IN THE COURT OF APPEALS OF IOWA**

No. 23-0098
Filed April 12, 2023

**IN THE INTEREST OF K.S. and M.S.,**
**Minor Children,**

**E.S., Father,**
         Appellant.

_____

Appeal from the Iowa District Court for Scott County, Cheryl E. Traum, District Associate Judge.

A father appeals the termination of his parental rights. **AFFIRMED.**

G. Brian Weiler, Davenport, for appellant father.

Brenna Bird, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Jean Capdevila, Davenport, attorney and guardian ad litem for minor children.

Considered by Tabor, P.J., and Schumacher and Ahlers, JJ.

**SCHUMACHER, Judge.**

A father appeals the termination of his parental rights. We find the termination of the father's parental rights is supported by clear and convincing evidence, termination is in the children's best interests, no exceptions to termination should be applied, and the Iowa Department of Health and Human Services (HHS) made reasonable efforts to reunify the family. We affirm the decision of the district court.

## I.     Background Facts & Proceedings

E.S. is the father and J.M. is the mother of K.S., born in 2016, and M.S., born in 2017.[1] The family came to the attention of HHS in September 2020 when the mother was assaulted by her paramour, A.G., in the presence of the children.[2] The children were removed on January 29, 2021, because the mother continued a relationship with A.G. and left the children with friends. The children were placed in foster care. The father was not available to care for the children because he was in prison.

The children were adjudicated to be in need of assistance under Iowa Code section 232.2(6)(b), (c), (e), (g), and (n) (2020). A review order, dated July 21, 2021, noted the father requested visits with the children while he was at the Newton Correctional Facility. The court found HHS had engaged in reasonable efforts. The review order outlined the requirements for the father to have visitation.

---

[1] The mother consented to termination of her parental rights. She does not appeal. The mother's parental rights to two other children with a different father were terminated at the same time as her rights to K.S. and M.S. Those children are not part of this appeal.

[2] In 2018, the family was involved in services based on a founded abuse report for denial of critical care, lack of proper supervision, and inadequate food.

The father has been in prison on a conviction for second-degree robbery since 2018. He expected to be released in September 2023. He had one or two visits with the children soon after the CINA case was initiated. He had two or three more visits when his parents brought the children to visit him. The father asked HHS for more visits. He wrote some letters to HHS and the children. He also called the children at the foster home.

On January 6, 2022, the State filed a petition seeking termination of the parents' rights. At the termination hearing on May 23, counsel for the father stated:

> Your Honor, [E.S.], the father of [K.S.] and [M.S.], is not consenting. However, he knows that he is in no position to take custody of his children. His desire is that both children be placed with his father, [G.S.], who is present. [G.S.] has been present from the beginning of this case and ready to take custody and care of the children.

The father had a video visit with the children on the Friday before the hearing, which was held on a Monday.[3]

The district court entered an order on June 3 terminating the parents' rights. The father's rights were terminated under section 232.116(1)(b), (d), (e), (f), and (i) (2022).[4] The court found termination was in the children's best interests, stating,

> The parents have been unable to make sufficient progress throughout the life of this case to work toward reunification. The parents have been unable to address the many issues that have

---

[3] An Interstate Compact for the Placement of Children (ICPC) home study was completed on the paternal grandfather, G.S., who lived in Florida. It was denied because he lived in an adults-only community. The social worker testified the paternal grandfather recently moved and a new ICPC could be completed. No issues were raised on appeal relating to the possible placement of the children with the paternal grandfather.

[4] The court found the State failed to establish the statutory requirements for section 232.116(1)(j) but also cited this section as a ground for terminating the father's parental rights to K.S. and M.S. We do not consider section 232.116(1)(j) in this opinion.

plagued them during this case and before this case was opened. The parents' inability to progress shows they are unlikely to ever become capable of providing a safe and stable home for these children.

The court found no statutory exceptions applied under section 232.116(3). The court also found the State had engaged in reasonable efforts to achieve permanency.

The father filed a motion for new trial, claiming the State had not engaged in reasonable services.[5] He also requested an extension of time. The State resisted the father's motion for a new trial on the ground that the motion was untimely. A hearing on the motion was held on December 6. The court denied the motion for a new trial. The father now appeals the termination of his parental rights.

## II.      Standard of Review

Our review of termination proceedings is de novo. *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012). The State must prove its allegations for termination by clear and convincing evidence. *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000). "'Clear and convincing evidence' means there are no serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence." *Id.* Our primary concern is the best interests of the children. *In re J.S.*, 846 N.W.2d 36, 40 (Iowa 2014).

In general, we follow a three-step analysis in reviewing the termination of a parent's rights. *In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010). We first consider

---

[5] The father also asserted that he received ineffective assistance of counsel and requested a different attorney. New counsel was appointed for him but he asked for that attorney to be replaced as well. A third attorney was then appointed for the father.

whether there is a statutory ground for termination of the parent's rights under section 232.116(1). *Id.* Second, we look to whether termination of the parent's rights is in the child's best interests. *Id.* (citing Iowa Code § 232.116(2)). Third, we consider whether any of the exceptions to termination in section 232.116(3) should be applied. *Id.*

### III. Sufficiency of the Evidence

The father claims the State did not present clear and convincing evidence to support termination of his parental rights. He points out that the children were not removed due to his conduct and states his parental rights should not be terminated based on the mother's conduct. The father also asserts the children could be returned to his custody within a year when he is released from prison.

"We will uphold an order terminating parental rights where there is clear and convincing evidence of the statutory grounds for termination." *In re T.S.*, 868 N.W.2d 425, 434 (Iowa Ct. App. 2015). "When the juvenile court orders termination of parental rights on more than one statutory ground, we need only find grounds to terminate on one of the sections to affirm." *Id.* at 435. We elect to focus on the termination of the father's parental rights under section 232.116(1)(f).[6]

---

[6] Section 232.116(1)(f) provides that a parent's rights may be terminated if the following have occurred:

    (1) The child is four years of age or older.

    (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.

    (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.

    (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

The children were four years of age or older; K.S. was born in 2016, and M.S. was born in 2017. *See* Iowa Code § 232.116(1)(f)(1). There was a CINA adjudication for them on March 12, 2021. *See id.* § 232.116(1)(f)(2). They were removed from parental custody on January 29, 2021, a period of more than twelve months before the termination hearing held on May 23, 2022. *See id.* § 232.116(1)(f)(3).

Section 232.116(1)(f)(4) requires a showing by clear and convincing evidence that a child "could not be safely returned to the custody of [the child's] parents." *In re S.O.*, 967 N.W.2d 198, 206 (Iowa 2021). Pursuant to section 232.116(1)(f)(4), a court considers whether a child can be returned to the parent at the time of the termination hearing. *In re A.B.*, 957 N.W.2d 280, 294 (Iowa 2021). The termination hearing was held on May 23, 2022, and the father did not expect to be released from prison until September 2023, at the earliest. The children could not be returned to his custody at the time of the hearing, as the father acknowledged.

We find all of the criteria for termination under section 232.116(1)(f) were met and the father's parental rights could be terminated under this section.

## IV. Best Interests

The father contends that termination of his parental rights is not in the children's best interests. He states the children remember him and are bonded with him. In considering the best interests of a child, we give "primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional needs of the child under section 232.116(2)." *P.L.*, 778 N.W.2d at 40. "It is well-

settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *Id.* at 41.

The district court found termination of the father's rights was in the children's best interests. The court stated:

> The parents have failed to address many concerns related to the children's safety, stability, and security. Their pattern of refusing to address these issues indicates they are unlikely to address these issues in the future. The children will benefit from the long-term certainty secured by terminating the parents' parental rights.

At the time of the termination hearing in May 2022, the children had been out of the parents' custody for about fifteen months. The father argues it would be in their best interests to wait another sixteen months, until September 2023, when he is released from prison so he could be reunited with them. We first note that the father's circumstances when he is released are unknown and it is unlikely the children could immediately be placed in his custody. Also, we find it is not in the children's best interests to wait such a long period of time for their father to possibly be able to care for them. "Children should not be made to suffer indefinitely in parentless limbo." *In re K.C.*, 660 N.W.2d 29, 35 (Iowa 2003). "Children simply cannot wait for responsible parenting." *In re C.H.*, 652 N.W.2d 144, 151 (Iowa 2002). We find termination of the father's parental rights is in the children's best interests.

### V. Exceptions

As part of his best interests argument, the father cites to section 232.116(3)(c), which provides the court may decide not to terminate parental rights if "[t]here is clear and convincing evidence that the termination would be

detrimental to the child at the time due to the closeness of the parent-child relationship."

The exceptions to termination found "in section 232.116(3) are permissive, not mandatory." *In re W.T.*, 967 N.W.2d 315, 324 (Iowa 2021) (citation omitted). "The court may exercise its discretion in deciding whether to apply the factors in section 232.116(3) to save the parent-child relationship based on the unique circumstances of each case and the best interests of the children." *In re A.R.*, 932 N.W.2d 588, 591 (Iowa Ct. App. 2019). "[O]nce the State has proven a ground for termination, the parent resisting termination bears the burden to establish an exception to termination under Iowa Code section 232.116(3) . . . ." *In re A.S.*, 906 N.W.2d 467, 476 (Iowa 2018). The child's best interests remain our first consideration. *Id.* at 475.

The district court found none of the statutory exceptions found in section 232.116(3) should be applied. We agree with the court's conclusion. The father has not met his burden to demonstrate a close relationship between himself and the children. The father has been in prison since 2018, well before HHS involvement, and has not been available to care for the children. Also, he has not shown termination of his parental rights would be detrimental to the children. He did not present any evidence to show that the children would be disadvantaged by termination of his parental rights. We find the court properly elected not to apply the exception found in section 232.116(3)(c).

### VI.      Reasonable Efforts

The father claims HHS did not make timely and reasonable efforts to reunite him with the children.[7]  He states, "The record shows that the father requested visits with the children from the start of the case and that [HHS] dragged its feet in laying the groundwork for visits, eventually providing just one visit, that went well, immediately prior to the termination hearing."

"Reasonable efforts are services to 'preserve and unify a family prior to the out-of-home placement of a child in foster care or to eliminate the need for removal of the child or make it possible for the child to safely return to the family's home.'" *In re L.T.*, 924 N.W.2d 521, 529 (Iowa 2019) (quoting Iowa Code § 232.102(10)(a)). The reasonable efforts requirement is not a strict substantive requirement for termination, but the scope of the efforts offered by HHS impacts the burden of proving the elements of termination.  *C.B.*, 611 N.W.2d at 493 .

The district court found:

> The history of this case demonstrates that reasonable efforts were undertaken to prevent or eliminate the need for removal of the children from the parental home, that reasonable efforts have been made to reunify the children with the parents, that reasonable efforts have been made to achieve permanency, and that failure to terminate parental rights would be contrary to the welfare of the children, as the termination of parental rights is the only reasonable means to establish permanency for the children.

We consider whether the State's efforts were reasonable under the unique circumstances of the case.  *See In re A.D.*, No. 21-1562, 2022 WL 246227, at *2 (Iowa Ct. App. Jan. 27, 2022); *see also In re R.E.J.*, No. 04-0967, 2004 WL

---

[7] The State challenges error preservation on this issue.  We elect to reach the merits of the father's reasonable-efforts claim.

1812814, at *2 (Iowa Ct. App. Aug. 11, 2004) (considering whether the State provided reasonable efforts to reunite a family under the specific facts of the case). The services supplied to an incarcerated parent, as with any other parent, are those services deemed to be reasonable under the circumstances. *In re S.J.*, 620 N.W.2d 522, 525 (Iowa Ct. App. 2000). Our court highlighted the department, in determining the reasonableness of services, may consider

> the age of the children, the bonding the children have or do not have with their parent, including any existing clinical or other recommendations concerning visitation, the nature of the parenting deficiencies, the physical location of the child and the parent, the limitations of the place of confinement, the services available in the prison setting, the nature of the offense, and the length of the parent's sentence.

*Id.*

Contrary to the father's assertion in his petition on appeal, he testified at his motion for a new trial that he received several visits while he was in prison. Also, he was able to talk to the children by telephone at the foster parents' home. In-person visitation was limited due to Covid restrictions. And, the children, who were only two and three years old when the case began, would need to be transported a substantial distance to visit the father. Additionally, the father testified to a visit where he was separated by glass from the children and could speak to them only by phone but they were too young to speak back. We find the State's efforts were reasonable under the circumstances presented here. And, as noted by the State, even if the father were to have been provided additional visitation, such does not alter the statutory element that the children could not be returned to the father's custody at the time of the termination hearing.

We affirm the district court's decision terminating the father's parental rights.

**AFFIRMED.**